UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Quanir TERRY,<br><br>Defendant | Crim No. 16-210 (KM)<br><br>**OPINION and ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

The defendant, Quanir Terry, is currently serving a federal sentence of imprisonment at FCI-Allenwood. Now before the Court is Mr. Terry's motion for compassionate release, under 18 U.S.C. § 3582(c)(1)(A). (DE 37). The motion invokes the threat of the COVID-19 pandemic and alleges that Mr. Terry's medical status renders him particularly vulnerable. For the reasons stated herein, the motion will be denied.

The underlying offense involved Mr. Terry's dealing in heroin while in possession of a loaded handgun. On August 24, 2016, Mr. Terry pled guilty to the offense of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). His criminal record, at the age of 26, encompassed not just one but six prior felony convictions. (PSR ¶¶ 31–42) I sentenced him, at the bottom of the Guideline range, to 110 months of imprisonment.

### A. BOP Application

In April 2020, Mr. Terry filed with the Bureau of Prisons ("BOP") a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (DE 37-2 at 23; precise date obscured). The Warden of FCI-Allenwood denied that request

1

for a sentence reduction. The United States concedes that the prerequisite of exhaustion of administrative remedies has been met.[1]

There is a separate remedy, committed to the discretion of the BOP, which may apply even in the absence of an application by the inmate. BOP was statutorily authorized to transfer certain inmates to home confinement during the last six months or 10% of a sentence. *See* 18 U.S.C. § 3624(c)(2), 34 U.S.C. § 60541(c). Pursuant to guidelines promulgated by the Attorney General, BOP instituted its own review in response to the COVID-19 pandemic. It prioritized certain cases for transfer to home confinement, based on inmate characteristics, the inmate's disciplinary record, medical risk, danger to the community, and other factors. Priority was given to three institutions, FCI Oakdale, Danbury, and Elkton, where the risk and need were most acute. Under the CARES Act, BOP was authorized to, and did, extend the maximum amount of time for which home confinement could be substituted for imprisonment. *See* CARES Act § 12003(b). BOP is currently prioritizing inmates who have served 50% of their sentences or have served 25% and have less than 18 months remaining.

According to BOP Deputy Regional Counsel Adam Johnson, Mr. Terry has not yet been considered for home confinement under 18 U.S.C. § 3624(c)(2) because he does not meet the criteria for expedited consideration.[2] (DE 38-1).

---

[1] The power to file a compassionate release motion under section 3582(c)(1)(A) is lodged in the first instance with the BOP. Only after the BOP has denied the defendant's application, or after 30 days have passed without any decision by the BOP, can the defendant file a motion in court. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) (denying remand of appeal seeking compassionate release as futile in light of lack of exhaustion); *United States v. Epstein,* Crim. No. 14-287, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (Wolfson, C.J.) (citing cases). That exhaustion prerequisite flows from the basic principle that a court can act only in compliance with statutory procedures, because it possesses no general or inherent power to modify a sentence once it is imposed.

[2] Mr. Terry moves in the alternative to have the court order that he be permitted to serve the remainder of the sentence in home confinement, pursuant to 18 U.S.C. § 3624(c). As to such an application, the BOP has the first and last word. The statute does not grant the district court authority to modify the sentence in that manner, and a district court has no general authority to dictate the place of confinement as such.

**B. Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)**

Hence this motion. A compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) is distinct from a BOP application for home confinement, *see supra*. Under section 3582(c), the district court is granted limited authority, not to dictate the place or manner of confinement, but to "reduce the term of imprisonment." *Id.*

As relevant here, 18 U.S.C. § 3582(c)(1)(A) empowers the court to reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," based on (i) "extraordinary and compelling reasons," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant policy statement, U.S.S.G. § 1B1.13, echoes the requirement of "extraordinary and compelling reasons," and also requires that the defendant not present a danger to the safety of any other person or the community, within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(g). The accompanying application notes include examples of medical conditions considered "extraordinary and compelling," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). More generally, it defines such a condition would be satisfied by a defendant who is

    (I)    suffering from a serious physical or medical condition,

    (II)   suffering from a serious functional or cognitive impairment, or

---

*See* 18 U.S.C. 3621(b); *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *Gottstein v. Finley*, 3:20-cv-0935, 2020 WL 3078028, at *6-*7 (M.D. Pa. June 10, 2020) (holding that the determination of whether an inmate is eligible for home confinement under the CARES Act rests solely with the BOP); *United States v. Catanzarite*, No. 18-cr-0362, 2020 WL 2786927, at *2 (D.N.J. May 29, 2020) (denying motion to convert sentence to home confinement because inmate did not suggest any authority to rebut Government's argument that the court lacked authority to do so). Nor does a federal prisoner have a constitutional right to service of sentence in a particular place. *See Sandin v. Connor*, 515 U.S. 472, 478 (1995). At any rate, the motion before the Court is clearly brought under 18 U.S.C. § 3582(c). (*See, e.g.*, Notice of Motion, DE 169.)

> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.,* cmt. n.1(A)(ii). The examples are not exclusive, however, and I consider all the relevant circumstances collectively.

Although specific conditions within FCI-Allenwood are of course most pertinent, I begin with more general trends. I dispense with an overall introduction to the COVID-19 pandemic and the widespread loss of life; it is by now familiar to all. Infections in Pennsylvania have, thankfully, abated as of this writing. From a peak of 1989 new cases per day in early April, the Commonwealth saw a reduced total of 362 new cases on June 16, 2020. (*See* https://www.google.com/search?q=pennsylvania+covid+cases&rlz=1C1SQJL_enUS780US780&oq=Pennsylvania+covid+cases&aqs=chrome.0.0l8.14943j0j8&sourceid=chrome&ie=UTF-8.). The areas surrounding FCI-Allenwood report a relatively low incidence of COVID-19; Lycoming County has a cumulative total of 158 cases (13 deaths), and Union County has a cumulative total of 52 cases (1 death). (*See* https://www.google.com/search?q=pennsylvania+covid+cases&rlz=1C1SQJL_enUS780US780&oq=Pennsylvania+covid+cases&aqs=chrome.0.0l8.14943j0j8&sourceid=chrome&ie=UTF-8.). I do not make light of that human cost; the fact remains, however, that the Allenwood area is not, like (for example) Newark, at the epicenter of the COVID-19 pandemic.

I turn to FCI-Allenwood itself. Starting in mid-March, Allenwood instituted procedures to minimize and contain infection. Currently, those measures include 14-day quarantines, face masks and other protective equipment, screening of inmates and staff, restricted access by outsiders, suspension of visits, and so on. (*See* www.bop.gov/coronavirus/index.jsp; Bureau of Prisons COVID-19 Action Plan: Phase Six,

4

https://www.bop.gov/resources/news/pdfs/ 20200414_press_ release_action_plan_6.pdf.).

Neither side has provided infection rates for Allenwood. According to the most recent figures on the BOP website, there are no positive cases at the Allenwood complex (low security and medium security). (*See* https://www.bop.gov/coronavirus/ (click "Full Breakdown and Additional Details"); *see also Jackson v. White*, No. 3:20-CV-0919, 2020 WL 3036075 (M.D. Pa. June 5, 2020) (denying interrelated applications for release from Allenwood low security facility, where no cases have been reported)). The court's research has not uncovered any recent cases granting compassionate release from Allenwood.[3]

I therefore turn to Mr. Terry specifically. Mr. Terry does not claim that he has actually been exposed to the virus, although his fears are entirely understandable.

Although a young man, Mr. Terry has medical conditions which, in combination, would place him at higher risk for a severe COVID-19 infection. Specifically, he cites type 2 diabetes and hypertension. Diabetes is, even standing alone, a risk factor for severe COVID-19 illness. (*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.). Hypertension, with no other underlying health conditions, is not considered to be a COVID-19 high risk category. (*See*

---

[3] A Google search uncovered scattered relevant news reports. They add little. One, dating from April 10, 2020, related that a recently-resigned staff member, who had had limited contact with other staff or inmates, had tested positive for the virus. (*See* https://www.dailyitem.com/coronavirus/update-allenwood-prison-staffer-tests-positive-for-covid-19-limited-contacted-with-staff-prisoners/article_29b79008-7a93-11ea-91da-9ff36b66bc50.html.). Another report noted that a transferee inmate had an elevated temperature and was referred for testing. (*See* https://www.pennlive.com/coronavirus/2020/03/one-of-32-federal-inmates-transferred-to-allenwood-complex-tested-for-coronavirus.html.).

https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Higher-Risk.). Here, however, we have the two in combination.

While accepting that Mr. Terry has type 2 diabetes and hypertension, I do not find that they rise to the "extraordinary and compelling" level, under the circumstances.

To begin with, Mr. Terry's medical conditions does not fall within the categories identified in U.S.S.G. § 1B1.13, cmt. n.1(A), quoted above. For example, Mr. Terry is not elderly, does not have advanced cancer, organ disease or dementia, and is not suffering from a serious condition that currently impairs his ability to care for himself and from which he is not expected to recover. Still, we are not in the pre-COVID era, when compassionate release was largely concerned with end-of-life care. This pandemic changes the picture; in combination with a petitioner's particular susceptibility, COVID-19 might dictate a finding that a medical situation is extraordinary, even if it would not have been so absent the pandemic. I therefore consider Mr. Terry's medical condition further.

Overall, the BOP has afforded Terry regular and adequate care for his conditions. Prison medical records reveal the following.

As of April 29, 2020, Terry's hypertension was declared "controlled" by medication. (Gov't Ex. A at 6, 29, 117 (BOP medical records submitted in camera for privacy reasons)).

BOP has monitored Terry's diabetes, and in particular his A1C levels.[4] Terry's A1C levels have fluctuated over the last two years between 7.3% and 13.3%. The lowest figure occurred in February 2019, when Terry had lost 20

---

[4] According to the American Diabetes Association, a person with A1C levels of 6.5% or more is considered diabetic. (*See* https://www.diabetes.org/a1c.). The goal for a diabetic, according to CDC, is to reduce levels to 7%. (*See* https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html#:~:text=A%20normal%20A1C%20level%20is,for%20developing%20type%202%20diabetes.)

6

pounds. Thereafter, noncompliance with his insulin regimen was a problem. (*Id.* at 8, 18–19, 27). More recently, Terry had regained most of the weight, and had an A1C level of 13.1%. On May 18, 2020, his treating physician strongly recommended losing weight, and increased his insulin dosage to bring down the A1C level. (*Id.* at 2–3).

I find that, with Terry's cooperation, BOP can continue to address his hypertension and diabetes appropriately. Although these conditions raise concerns, I find that, in the context of overall trends in infections, the low-to-nonexistent infection rate at Allenwood, and the measures taken by BOP to minimize and contain infections, the circumstances are not so extraordinary and compelling as to support compassionate release.

That being the case, I will discuss the remaining factors more briefly. Chiefly pertinent are the familiar sentencing factors of 18 U.S.C. § 3553(a)(1), "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A).

Mr. Terry calls himself a nonviolent offender, and I take his point that he was not accused of shooting or injuring anyone. Nevertheless, his offense of conviction involved the carrying of a loaded gun in connection with street-level heroin dealing. Punishment, a just sentence, respect for the law, and deterrence of others all require a lengthy term of imprisonment.

Specific deterrence is a major concern. At the age of 26, Mr. Terry had compiled a record of six prior felony convictions. He was on probation from one of them when he committed the current offense. Mr. Terry has stated a resolve that he will not reoffend, but his record means that he still must shoulder a burden of proof on that score.

Mr. Terry's presumptive release date (apparently assuming good time credits) is October 23, 2023. Originally sentenced to 110 months' imprisonment, he still has some 41 months left to serve. The sentence served thus far is not sufficient to meet the statutory goals of sentencing.

That said, Mr. Terry points to some positive factors. His *pro se* submission is intelligent, measured, and respectful in tone. He has had no disciplinary problems while incarcerated. He has obtained his G.E.D. He has

completed programs in anger management and emotional self-regulation, in an effort to break destructive patterns of behavior. He has a supportive family to which he would like to return. The Court applauds these efforts, which bode well for the future, but the past has its claims as well; a significant balance of the price of past criminal activity remains to be paid.

In short, these positive factors do not overcome the lack of compelling circumstances.

## ORDER

Accordingly, for the reasons expressed above,

IT IS this 17th day of June, 2020

ORDERED that the motion (DE 37) for compassionate release is DENIED.

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge