**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | Crim No. 16-210 (KM) |
| **v.** | **OPINION and ORDER** |
| **Quanir TERRY,** |  |
| **Defendant** |  |

**KEVIN MCNULTY, U.S.D.J.:**

By opinion and order filed June 17, 2020, I denied the motion of the defendant, Quanir Terry, for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ("Opinion", DE 39). Now before the court is Mr. Terry's motion for reconsideration of that decision. (DE 40) Familiarity with the earlier decision is assumed; I do not repeat here the facts or analysis.[1]

My reasoning of my earlier ruling was essentially as follows. Mr. Terry, incarcerated at Allenwood Federal Correctional Complex,[2] was serving a sentence of 110 months for dealing in heroin while in possession of a loaded handgun. His criminal record, at the age of 26, encompassed six prior felony convictions.

Allenwood had implemented protocols intended to inhibit spread of the disease. At the time (June 2020) the testing that had occurred had not revealed

---

[1]    This motion was filed some six months after the court's ruling. In the analogous context of a civil case, a motion for reconsideration must ordinarily be filed within 14 days, and will be granted only under limited circumstances. *See* D.N.J. Local Civ. R. 7(f). What Mr. Terry is arguing in this criminal matter, however, is that the circumstances have changed. I therefore will not impose any time limit or threshold substantive bar to review, but will consider the motion directly on the merits.

[2]    Although he is now at FCI Allenwood Medium, he was then at the higher security USP Allenwood. *See infra.*

any currently active infections at the Allenwood low and medium security facilities. Although a young man, Mr. Terry had a medical condition, type 2 diabetes, recognized by the CDC as a COVID-19 risk factor; he also had hypertension, though not at a severity level that is recognized as a risk factor. Prison medical records revealed that these conditions were being regularly treated and were under control. At some point, apparently in 2019, noncompliance with an insulin regimen was a problem, and more recently he had regained weight that he had lost. All in all, I did not find the circumstances to be extraordinary and compelling.

I then considered the applicable sentencing factors of 18 U.S.C. § 3553(a)(1). *See* 18 U.S.C. § 3582(c)(1)(A). The nature of the offense, involving drugs and a loaded gun (but no acts of violence), suggested the need for punishment and deterrence. His criminal record, and commission of one offense while on probation, also weighed against release. At the time, he had some 41 months to go until his presumptive release date. On the positive side, I noted that Mr. Terry was intelligent and civil; that he had obtained his GED; that he had no record of disciplinary infractions while incarcerated; and that he had taken positive steps to change his life. On balance, I nevertheless found that the § 3553 factors would weigh against release.

In support of his focused and clear motion for reconsideration, Mr. Terry raises three essential points. I discuss them in turn.

(a)     Mr. Terry notes that my prior decision contains a factual mistake. Specifically, he writes that, at the time of the motion, he was confined at *USP* Allenwood, which at the time had four COVID-19 cases. Only later, in October 2020, was he transferred to *FCI* Allenwood Medium, which was suffering an outbreak of COVID-19 cases.[3]

---

[3]     The Federal Correctional Complex at Allenwood comprises three institutions. USP Allenwood is the highest security institution of the three.. https://www.bop.gov/locations/institutions/alp/ . FCI Allenwood Medium, https://www.bop.gov/locations/institutions/alm/, and FCI Allenwood Low, https://www.bop.gov/locations/institutions/alf/, are the corresponding medium and low security facilities. USP Allenwood houses approximately 498 inmates, FCI

Defendant's motion correctly stated that he was confined at USP Allenwood, not FCI Allenwood. His motion did not state, however, that there had been any COVID-19 cases reported at USP Allenwood, and it appears that there were not. The government's response reported that there had been no reported COVID-19 cases at USP Allenwood as of June 9, 2020, citing the Bureau of Prisons website. (DE 38 at 11 ("USP Allenwood has yet to have a single positive case inside its facility. See Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/ coronavirus (accessed on June 9, 2020)"). It is true that my decision mistakenly reported the COVID-19 figure from the FCI Allenwood Medium and Low facilities. Accuracy is important, and I sincerely appreciate the correction. But the figure which I reported was likewise zero.[4]

Mr. Terry now states that there were actually four COVID-19 cases at USP Allenwood at the time of my decision. Assuming that is true, the difference between zero and four reported cases would have made little or no difference to my decision. At any rate, on reconsideration, I will consider the current conditions.

Currently, COVID-19 rates at the Allenwood complex are as follows:

| Facility | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates recovered | Staff recovered |
|----------|------------------|----------------|---------------|--------------|-------------------|-----------------|
| Allenwood Low FCI | 0 | 0 | 0 | 0 | 282 | 19 |
| Allenwood Medium FCI | 0 | 1 | 0 | 0 | 533 | 49 |
| Allenwood USP | 0 | 2 | 1 | 0 | 130 | 32[5] |

(b)    Mr. Terry reports that, as of December 18, 2020, he tested positive for COVID-19, and he fears the consequences for someone with his health

---

Allenwood Medium approximately 1137 inmates, and FCI Allenwood Low approximately 904 inmates.

[4]    My opinion cross-checked the figures against local newspaper accounts. One related that a recently-resigned staff member had tested positive for the virus; another noted that a transferee inmate had an elevated temperature and was referred for testing.

[5]    Source: https://www.bop.gov/coronavirus/

conditions. He blames the prison authorities for transferring him from the USP to the FCI Medium facility, where, he believes, he contracted the virus. He does not report any adverse health consequences, however. Nor does he report any COVID-19 symptoms or treatment. For all that appears from his motion, he, like millions of people outside of prison, has tested positive for exposure to the virus.

The figures reported above, and particularly the number of "recovered" cases, indicate that all components of the Allenwood complex, including FCI Allenwood Medium, suffered a serious COVID-19 outbreak sometime after I filed my earlier decision.[6] Unfortunately, Mr. Terry became one of the positive-case statistics, and he is highly critical of the prison authorities for transferring him to FCI Medium, where rates were higher. Compassionate release, however, is not designed to punish actions of the prison authorities, but to accommodate prisoners whose circumstances are demonstrated to be extraordinary and compelling. In the context of this pandemic, Mr. Terry's situation does not exceed the bounds of the usual.

The silver lining to Mr. Terry's exposure to COVID-19, if I may put it that way, is that he may now enjoy greater immunity from further infection. (I have no expert evidence before me on that issue.) But even if not, the BOP reports that at the Allenwood complex, which houses about 2500 prisoners, 980 inmate vaccinations have already been completed, and that vaccinations are ongoing.[7] That rate (approximately 39% of the total inmate population) is higher than that for, *e.g.*, the population of New Jersey, the location to which Mr. Terry seeks release. *See* https://covid19.nj.gov/forms/datadashboard (completed vaccination rate of approximately 24%).

---

[6]     It may be that, to some extent, the apparent outbreak reflects increased testing. It is undisputed, at any rate, that many more cases of infection were detected after June 2020.

[7]     https://www.bop.gov/coronavirus/ In the case of a two-dose procedure, vaccinations are reported as complete only when both doses have been administered.

(c)      Less significantly, Mr. Terry takes issue with the medical evidence of noncompliance with his insulin medication and his doctor's advice to lose weight. The insulin, he says, was not working, and it was difficult to maintain weight loss on a prison diet, particularly with limited opportunities to exercise. He disputes that certain items marked on the prison menu as "heart healthy" should be considered such. To be clear, I was not imposing a requirement of weight loss; many, in and out of prison, find that extremely difficult. Nor am I equipped to second-guess medical judgments about insulin dosage. My main point was that these medical conditions were not being neglected, but were the subject of ongoing treatment.

These factors, alone or in combination, do not persuade me that Mr. Terry's situation has risen to the level of extraordinary and compelling.

The applicable § 3553(a) factors, moreover, continue to weigh heavily against release. I adhere to my prior decision.

## ORDER

Accordingly, for the reasons expressed above,

IT IS this 12th day of April, 2021

ORDERED that the motion (DE 40) to reconsider denial of compassionate release is DENIED.

/s/ Kevin McNulty

_____
KEVIN MCNULTY
United States District Judge

5